Grace Ford DILLON, Conservator of the Person and Estate of Ronald S. Kelly, Plaintiff,

v.

STATE OF MISSISSIPPI, MILITARY DEPARTMENT, ARMY NATIONAL GUARD and/or Mississippi National Guard and United States of America, Defendants.

Cynthia M. HOLLOWAY, Individually and as Mother and Next Friend of the Minors Christina Marie Byrd, Candice Lynn Byrd, Robert Howard May, and William Andrew May, Plaintiffs,

v.

STATE OF MISSISSIPPI, MILITARY DEPARTMENT, ARMY NATIONAL GUARD and/or Mississippi National Guard and United States of America, Defendants.

Civ. A. Nos. 3:92–CV–0714LN, 3:92–CV–0715LN.

United States District Court, S.D. Mississippi, Jackson Division.

May 25, 1993.

Lawrence A. Arcell, Barker, Boudreaux, Lamy & Foley, New Orleans, LA, William F. Riley, Riley & Pintard, Natchez, MS, for plaintiff.

Robert E. Sanders, Atty. General's Office, Jackson, MS, Robert A.K. Doehl, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion to dismiss of defendant United States of America. The plaintiffs, Grace Ford Dillon, Conservator of the Person and Estate of Ronald S. Kelly, and Cynthia M. Holloway, individually and as mother and next friend of the minors Christina Marie Byrd, Candice Lynn Byrd, Robert Howard May and William Andrew May, have, in response to the government's motion to dismiss, filed a motion to remand. The court concludes that plaintiffs' motion to remand should be denied. The court, however, will stay its consideration of the government's motion to dismiss in order to give plaintiffs an opportunity to respond to that motion.

On September 9, 1990, Chet May was killed and Ronald S. Kelly was rendered a quadriplegic as the result of injuries received during a training mission as guardsmen with the Mississippi Army National Guard. The men were engaged in a "helocasting" exercise performed by aviation and special forces units as part of their training and duties with the National Guard. On September 4, 1992, Kelly's conservator and May's heirs at law filed separate actions in the Circuit Court of the First Judicial District of Hinds County seeking to recover damages based on allegations that Kelly's injuries and May's death were caused by the negligence of the State of Mississippi Military Department Army National Guard and/or the Mississippi National Guard, as well as several persons who were Kelly's and May's superior officers in the training mission.[1]

---

1. "Helocasting" involves jumping from a moving helicopter into a body of water. Plaintiffs allege in their complaints that defendants "negligently, willfully and with a wanton and reckless disregard for the safety of [Kelly and May] ordered [them] to jump from a flying and moving helicop-

Based on 28 U.S.C. § 2679(d)(2), the case was timely removed to this court by the individual defendants, William E. Ogle, Jr., Kelly C. MacNealy, James K. West, William E. McIntosh, Benjie C. Jackson, Ronnie W. Howell, Donald D. Howarth and Allen E. Brewer, upon the certification of a designate of the United States Attorney General that at the time of the incident that is the subject of plaintiffs' complaints, the individual defendants were acting within the scope of their employment as employees of the United States. Upon removal, this court ordered that the United States be substituted as a defendant in place of the individual defendants and dismissed the individual defendants from the action.

On November 16, 1992, the United States moved to dismiss this suit, contending the suit is barred under the doctrine set forth in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and reaffirmed in *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), because Kelly and May were engaged in activity incident to their military service at the time of the accident that gave rise to this action. Rather than responding to defendants' motion, plaintiffs moved to remand this action to the state court from which it was removed, contending that the defendant National Guard members were not federal employees or, alternatively, were not acting within the scope of their federal employment at the time they may have been negligent in connection with Kelly's and May's injuries.

### MOTION TO REMAND

The issue presented by plaintiffs' motion to remand is whether the United States was properly substituted as defendant in place of the individual defendants. The resolution of this issue requires a determination by this court of whether, at the time of the incident, these individuals were federal employees acting within the scope of their federal employment.

Section 1346(b) of Title 28, United States Code, grants the federal courts exclusive jurisdiction of civil actions on

claims against the United States, for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The remedy provided by section 1346(b) is "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim...." 28 U.S.C. § 2679(b).

In this vein, the Federal Tort Claims Act, as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly referred to as the Westfall Act), 28 U.S.C. § 2679(b)(1), provides that where a federal employee is sued for monetary damages arising from a common law tort allegedly committed by the federal employee acting within the scope of his employment,

[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attor-

---

ter ... with full knowledge that such order was exposing [them] to probably serious harm and injury; and the [defendants] thereby negligently, wantonly and recklessly disregarded the probable consequences to [Kelly and May] by the aforesaid conduct of [their] superiors." It is plaintiffs' position that Kelly and May were ordered to jump from a helicopter that was flying too low and moving too fast.

ney General shall conclusively establish scope of office or employment for purposes of removal.

A scope of employment certification is, by the explicit directive of the statute, conclusive for purposes of removal. *Mitchell v. Carlson,* 896 F.2d 128, 131 (5th Cir.1990). However, the United States concedes, and the majority of courts have held that a scope certification is subject to judicial review for purposes of substitution. That is, once a case has been removed to federal court upon a scope of employment certification, the plaintiff is entitled to litigate before the court the question of whether the employee was acting within the scope of his employment at the time of the incident. *See North Shore Strapping Co. v. United States,* No. 92–3730, 1993 WL 141054, 1993 U.S.App. LEXIS 10539 (6th Cir.1993) (scope certification subject to review by district court); *Schrob v. Catterson,* 967 F.2d 929 (3d Cir.1992);

*Brown v. Armstrong,* 949 F.2d 1007, 1011 (8th Cir.1991); *Meridian Intern. Logistics, Inc. v. United States,* 939 F.2d 740 (9th Cir.1991); *Hamrick v. Franklin,* 931 F.2d 1209 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991); *Brown v. Armstrong,* 949 F.2d 1007, 1011 (8th Cir.1991); *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538 (11th Cir.1990), *amended,* 924 F.2d 1555 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991); *Melo v. Hafer,* 912 F.2d 628 (3d Cir.1990), *aff'd on other grounds,* — U.S. —, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Nasuti v. Scannell,* 906 F.2d 802 (1st Cir.1990); *Arbour v. Jenkins,* 903 F.2d 416, 421 (6th Cir.1990). *Contra Johnson v. Carter,* 983 F.2d 1316 (4th Cir.1993) (district court erred in not giving conclusive effect to the Attorney General's scope certification); *Mitchell v. Carlson,* 896 F.2d 128 (5th Cir. 1990); *Aviles v. Lutz,* 887 F.2d 1046 (10th Cir.1989).[2] If the court determines, upon *de*

---

2. The Fifth Circuit, in *Mitchell v. Carlson,* 896 F.2d 128 (5th Cir.1990), stated that the Attorney General's certification of scope of employment is not subject to judicial review: "[T]he ... certification procedure [has] conclusive effect on the issue of whether the employee acted within the scope of employment." *Id.* at 131. For a number of reasons, however, the court does not consider *Mitchell* controlling in this case.

The court in *Mitchell* was not directly confronted with the precise question of the propriety of judicial review of a scope of employment certification. The district court in *Mitchell* had substituted the United States as the defendant based upon the scope of employment certification (apparently accepting that certification at face value) and thereafter dismissed the United States upon concluding that it lacked subject matter jurisdiction because the United States had sovereign immunity from plaintiff's claim for assault and battery. The district court, however, rather than dismissing the case altogether, vacated its substitution order and reinstated the employee as defendant and remanded the case to state court. The Fifth Circuit held that the district court erred in reinstating the employee as defendant, explaining that once the employee was certified as acting within the scope of her employment, the plaintiff's action was exclusively against the United States under the FTCA and therefore, the plaintiff was barred from proceeding against the employee, even though plaintiff was also barred by immunity from proceeding against the United States. *Id.* at 134–35.

Though the Fifth Circuit did comment in *Mitchell* that a scope certification was conclusive, in view of the specific issues presented in *Mitchell,* the court is not persuaded that *Mitchell*

represents the Fifth Circuit's ultimate position on the issue of the reviewability of scope certifications. This is particularly so in light of subsequent developments. *Mitchell* was one of the earlier cases decided under the Westfall Act and, at the time the case was decided, the Department of Justice maintained the position that under the Act, a certification by the Attorney General or his designee was conclusive on the issue of scope of employment for all purposes. Subsequently, however, the Department of Justice retreated from this position and acknowledged that these certifications are subject to judicial review when challenged by a plaintiff. *See Brown,* 949 F.2d at 1011 n. 6 (noting Department of Justice's change of position on issue); *S.J. & W. Ranch,* 913 F.2d at 1539 n. 1 (noting government's shift of position); *Melo,* 912 F.2d at 640. The government here recognizes that this court may independently evaluate the scope of employment issue. And as the text indicates, with only one exception, *see Johnson,* 983 F.2d at 1320, every court that has addressed this issue since *Mitchell* has concluded that scope certifications are reviewable. The reasoning of these courts is convincing and prompts this court to conclude that review of the scope certification is appropriate. *See also Martin v. Kersey,* No. 92–2227, 1992 WL 245673, at *4, 1992 U.S.Dist. LEXIS 13992, at *11 (E.D.La. 1992) ("In light of the government's own recent concession that judicial review of certification is proper, and after reviewing the compelling rationale of the most recent circuit court opinions, I am persuaded that certification of scope is conclusive for purposes of removal to federal court, but is properly reviewable by the district courts before substituting the United States as a party.").

*novo* review, that the employee was acting within the scope of his employment at the time of the incident, then the plaintiffs' exclusive remedy is an action against the United States under the Federal Tort Claims Act. If, on the other hand, the court concludes that the employee was not acting within the scope of his employment at the time of the incident, then the proper defendant is the individual employee, not the United States; and in that event, the United States will not be substituted as defendant and the case will be remanded to state court. *See Schrob,* 967 F.2d at 934 n. 8.

■ Though subject to judicial review, an Attorney General's scope certification is *prima facie* evidence that the employee's challenged conduct was within the scope of employment. *Schrob,* 967 F.2d at 935. The plaintiff who challenges a scope certification thus bears the burden of proving that the challenged conduct did not occur within the scope of federal employment. *See id.; Brown,* 949 F.2d at 1012; *S.J. & W. Ranch,* 913 F.2d at 1543. To sustain his burden, the plaintiff "must come forward with specific facts rebutting the government's scope-of-employment certification." *Schrob,* 967 F.2d at 935; *Brown,* 949 F.2d at 1543; *Hamrick,* 931 F.2d at 1211; *Forrest City Mach. Works,* 953 F.2d at 1088.

In the case *sub judice,* a designee of the Attorney General has certified that the individual guardsmen named as defendants were acting within the scope of their federal employment at the time of the incident that is the subject of this litigation[3] and, consistent with the directive of § 2679(d), this court has substituted the United States as the party defendant in place of the individual defendants.[4] Plaintiffs, however, have moved to remand this case to state court based on their allegation that the individual defendants were not acting in the course and scope of federal employment when the accident occurred.

■ In this case, there are really two issues: (1) whether the individual defendants were federal employees; and (2) whether those individuals, if federal employees, were acting within the scope of their employment at the time of the accident. The issue of whether the guardsmen named as defendants were federal employees is a question of federal law, whereas the issue of whether their actions were within the scope of their federal employment for purposes of the Westfall Act is governed by the law of the state where the incident occurred. *Forrest City Mach. Works,* 953 F.2d at 1088 n. 5; *Nasuti,* 906 F.2d at 805 n. 3; *Arbour,* 903 F.2d at 422; *S.J. & W. Ranch,* 913 F.2d at 1542. The determination of whether the employees' actions were within the scope of employment for purposes of the Westfall Act, where the facts are undisputed, is a question of law. *Forrest City Mach. Works, Inc. v. United States,* 953 F.2d 1086, 1088 n. 4 (where there is no factual dispute, scope of employment issue is treated as question of law); *S.J. & W. Ranch,* 913 F.2d at 1542 (determination of scope of employment involves question of law as well as fact); *Arbour,* 903 F.2d at 422 (scope of employment issue is regarded as one of law, not fact); *Hoston v. Silbert,* 681

**3.** The Attorney General has delegated certification authority to the Assistant Attorney General in charge of the Civil Division of the United States Department of Justice who has, in turn, delegated that authority to the Directors of the Torts Branch of the Department of Justice. 28 C.F.R. § 16.3 and Appendix.

**4.** The Westfall Act indicates that substitution of the United States as defendant is an automatic consequence of certification that the employee was acting within the scope of his employment stating, as it does, that the United States "shall be substituted...." *S.J. & W. Ranch,* 913 F.2d at 1543. In cases where the United States is substituted as the party defendant upon certification and the plaintiff thereafter challenges the substitution, then the court must conduct a re-

view of the scope of employment issue and must, if it concludes that the employee was not in the scope of federal employment at the relevant time, vacate or set aside its substitution order. Most courts, though, rather than taking this approach, have reviewed the scope of employment in connection with ruling on a request for substitution. *See, e.g., Forrest City Mach. Works, Inc. v. United States,* 953 F.2d 1086 (8th Cir.1992) (district court undertook scope of employment review before substituting United States as defendant); *Brown,* 949 F.2d at 1012. From a practical standpoint, however, it makes no substantive difference whether the review is conducted in relation to a motion to substitute, or upon motion by plaintiff after substitution.

F.2d 876, 879 (D.C.Cir.1982) (scope of employment is question of law, not fact).

◼ There is no question here but that each of the individual guardsmen named by plaintiffs as defendants was acting in the scope of his employment at the time of the incident. Indeed, the plaintiffs have themselves alleged in their complaints that Kelly and May were "involved in helocasting as part of [their] training and duties" as guardsmen when the accident occurred. And in opposition to plaintiffs' motion to remand, the United States has submitted the affidavits of Colonel Richard S. Poole and Lieutenant Colonel Lawrence L. Shannon, both of whom state that the named individual defendants were likewise engaged in unit training activities at the time of the incident. Documentary evidence supplied by the government reflects the duties of each of these individuals on the date in question. Chief Warrant Officer 4 James K. West and Chief Warrant Officer William E. McIntosh flew the helicopter from which Kelly and May jumped. The crew was instructed on how to fly the helocasting operation by instructor pilot Chief Warrant Officer 2 William E. Ogle, Jr. The aviation unit's company commander was Captain Kelly C. MacNealy. The officer-in-charge of the helocasting site was Captain Benjie C. Jackson. Major Allen E. Brewer was the training officer for the special forces unit of which Kelly and May were members. Sergeant First Class Ronnie W. Howell was the castmaster for the helicopter from which Kelly and May jumped and Master Sergeant Donald D. Howarth was the acting sergeant major for the special forces unit.

◼ Though it is not altogether clear from their submissions, the plaintiffs appear to suggest that these individuals, though engaged in a training mission when the accident occurred, were not employees of the federal government, but rather were employees of the State of Mississippi. This position is without merit. The Federal Tort Claims Act defines the term "employee of the government" to include "members of the National Guard while engaged in training or duty under section 316, 502, 503, or 505 of title 32." The affidavits of Col. Poole and Lt. Shannon confirm that the individual defendants were, at the relevant time, training for a federal mission pursuant to 32 U.S.C. § 502. The defendants were thus federal employees while on that training mission.

◼ They were also acting in the scope of their employment when the accident occurred. Under Mississippi law, two tests are used for determining scope of employment, the right of control test and the relative nature of the work test. Under the former, four factors are relevant: "(1) direct evidence of right or exercise of control; (2) method of payment; (3) the furnishing of equipment; and (4) the right to fire." *Cooks v. Neely Lumber Co.,* 275 So.2d 386, 388 (Miss.1973). The relative nature of the work test looks at the character of the alleged employee's work or business and its relation to the employer's business. *Id.* Application of either test verifies the government's position that these defendants were acting within the scope of federal employment. Patently, the nature of the individual defendants' activities related directly to the function of the National Guard to strengthen national defense and military preparedness. Further, inasmuch as federal and state statutes provide that the federal government will pay, equip and set the standards for the training and discipline of the Mississippi National Guard when it is performing a federal mission, the right of control test is satisfied. More specifically, state and federal statutes provide that the federal government will pay members of the Mississippi National Guard when engaged in training exercises, 32 U.S.C. § 502 and Miss.Code Ann. § 33–7–21 (1972); that the federal government will equip the Mississippi National Guard, 32 U.S.C. §§ 701 and 702 and Miss. Code Ann. § 33–7–17 (1972); and find that the federal government may set discipline and training requirements for the Mississippi National Guard, while in training, 32 U.S.C. § 501(a) and Miss.Code Ann. § 33–7–3 (1972). In addition, federal statutes provide for the discharge of guardsmen by the federal government. 32 U.S.C. §§ 322 and 324. In the absence of proof to the contrary, the court must conclude that defendants were acting within the scope of their federal employment at the time of the incident at issue in this case. *See Martin v. Kersey,* 1992 WL

245673, at *4, 1992 U.S.Dist. LEXIS 13992, at *11 (certification stands where plaintiffs fail to come forward with evidence to rebut United States Attorney's certification that defendant was acting within scope of her employment).

The court has before it the certification, which the government has substantiated with additional, supporting evidence described *supra.* Yet the plaintiffs have not come forward with any evidence, or even suggested any possible theory which might support their position that these defendants were not acting within the scope of federal employment. Instead, plaintiffs merely argue that the court must not make a scope of employment determination until plaintiffs have had an opportunity to conduct discovery and an evidentiary hearing is held by the court. Contrary to plaintiffs' contention, however, there is no requirement that the court conduct an evidentiary hearing, nor that the court permit discovery prior to ruling on the scope of employment issue. *North Shore Strapping,* 1993 WL 141054, at *4, 1993 U.S.App. LEXIS 10539, at *9 ("[N]either the certification statute or the cases interpreting it have imposed a hearing requirement as a mandatory part of certification review."). Certainly, there are cases in which discovery and, perhaps, an evidentiary hearing may be necessary to resolve the scope of employment issue. But this is not one of those cases. *North Shore Strapping,* 1993 WL 141054, at *4, 1993 U.S.App. LEXIS 10539, at *8 (complete absence of evidence contrary to certified position of United States established propriety of district court's perfunctory substitution of United States as defendant); *Schrob,* 967 F.2d at 936 ("If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits."); *Forrest City Mach. Works,* 953 F.2d at 1088 (because plaintiffs had not come forward with evidence contradicting government's scope of

employment certification, request for discovery was properly denied); *Brown,* 949 F.2d at 1012 n. 9 (in absence of evidence that government employees exceeded scope of employment, court denied request to depose certifying United States Attorney).[5] The plaintiffs have not presented one shred of evidence to refute the evidence submitted by the government on the scope of employment issue. Under these circumstances, the court cannot conclude that discovery is warranted or that an evidentiary hearing would prove to be of any use. The court, therefore, will refuse plaintiffs' request for discovery.

Based on the foregoing, the court concludes that the United States was properly substituted as a defendant in place of those guardsmen defendants named by plaintiffs and therefore further concludes that plaintiffs' motion to remand should be denied. There remains for consideration the motion by the United States to dismiss. The Government contends in its motion that this action is barred by virtue of the intramilitary immunity doctrine established in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1940), under which the United States is immune from suits for injuries that "arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. As this case has developed, the plaintiffs have not filed a response to or submitted a brief relating to the United States' motion to dismiss. Instead, they filed their motion to remand. In order to ensure that plaintiffs are provided the opportunity to respond to the government's motion to dismiss, the court will grant them until June 8, 1993 to respond, if they desire to do so.

Based on the foregoing, it is ordered that the plaintiffs' motion to remand is denied. It is further ordered that plaintiffs shall have until June 8, 1993 to file a response to the motion to dismiss filed by the United States.

---

5. In *Arbour v. Jenkins,* 903 F.2d 416, 421 (6th Cir.1990), the Sixth Circuit concluded that the district court erred by "finding the scope of employment certification nonreviewable and by, accordingly, denying [the plaintiff's] request for

discovery." Here, the court is fully cognizant of its responsibility to make an independent evaluation on scope of employment but merely concludes that the plaintiffs have not demonstrated that they have an actual need for discovery.