64 F.3d 663
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara HUCLE, Plaintiff-Appellant,
v.
Daniel L. JENKINS, Defendant-Appellee.
 No. 94-3788.
 United States Court of Appeals, Sixth Circuit.
 Aug. 15, 1995.
 
 Before: CONTIE, RYAN and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Barbara Hucle filed suit against defendant Daniel Jenkins, a fellow letter carrier at the United States Postal Service ("USPS"). The complaint alleges that Jenkins libeled and slandered Hucle and tortiously interfered with her employment contract with USPS. Jenkins removed the action from the Common Pleas Court of Union County, Ohio, to federal district court. The United States was substituted as party defendant in place of Jenkins following certification by the United States Attorney that Jenkins was acting within the scope of his employment. 28 U.S.C. Sec. 2679(d)(1). Thereafter, the government filed a motion for summary judgment which the district court granted. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 After Jenkins became suspicious that Hucle was not delivering the mail assigned to her route, he searched a dumpster located behind the Parkview Drive-thru, a business owned in part by Hucle, and found discarded mail. Jenkins telephoned the Postal Inspector, who requested that Jenkins retrieve the mail from the dumpster and hold it until the postal inspector could collect it. Within a week, postal inspectors met with Jenkins and received 728 pieces of mail that Jenkins claimed to have recovered from the dumpster.
 
 
 3
 On February 23, 1993, a postal patron telephoned the Postmaster of Marysville, Ohio, to inform him that she found discarded mail in a dumpster at a car wash. The postal inspection service determined that the mail was addressed to customers on the route Hucle served. Thereafter, the postal inspection services initiated an administrative action to remove Hucle from the postal service. In the notification document removing Hucle from service, it was noted that in addition to the mail recovered from the car wash dumpster five brochures from the Cabinet Store were discovered. The store manager remembered giving them to Hucle. Moreover, handwriting on one of the brochures was identified as Hucle's. (Rec. at 0034.)
 
 II.
 
 4
 We uphold the grant of summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988).
 
 III.
 
 5
 "The Federal Employees Liability Reform and Tort Compensation Act shields federal employees from liability for common law torts committed within the scope of employment." Henson v. National Aeronautics & Space Admin., 14 F.3d 1143, 1147 (6th Cir. 1994). Thus, if Jenkins acted within the scope of his employment, Hucle's claim should have been brought under the Federal Tort Claims Act, and Jenkins is protected from liability under the provisions.
 
 
 6
 The district court correctly noted that the scope of employment issue is a question of law determined by the state law in which the conduct occurred. See Henson, 14 F.3d at 1147; Arbour v. Jenkins, 903 F.2d 416, 421 (6th Cir. 1990). In Henson, this circuit observed that under Ohio law, "if the employee acts within its authority during the course of employment even though acting intentionally or maliciously," he acts within the scope of employment. Henson, 14 F.3d at 1147. In contrast, under Ohio law, an employee acts outside the scope of his employment "where the act has no relationship to the conduct of the principal's business or the conduct is so divergent that its very character severs the relationship of employer-employee." Thomas v. Ohio Dep't of Rehabilitation & Correction, 548 N.E.2d 991, 994 (Ohio App. 1988).
 
 
 7
 Hucle contends that the district court incorrectly held that Jenkins was acting within the scope of his employment, given the standard enunciated in Calhoun v. Middletown Coca-Cola Bottling Co., 332 N.E.2d 73 (Ohio App. 1974). The Calhoun court held that an employee acts within the scope of his employment when his conduct is of the kind which the employee is employed to perform, "occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master." Id. at 76 (quoting Prosser, Law of Torts 461 (4th ed. 1971).
 
 
 8
 First, Hucle argues that Jenkins' duties include sorting and delivering mail, not investigating his suspicions regarding other employees. According to Hucle, if Jenkins suspected her of not delivering mail, he should have called postal authorities. Instead he conducted his own investigation. Hucle concludes that any action relating to the postal service other than delivery, such as making false statements to the postal inspectors regarding Hucle's mail delivery, was beyond the scope of Jenkins' employment because it was not the kind of conduct he is employed to perform. Next, Hucle contends that because Jenkins' actions were not conducted in the time and place envisioned by his employment, he was not acting within the scope of his employment. Hucle states that Jenkins searched the dumpster first on Sunday and second at approximately 4 a.m. Thursday morning. These are not the times that Jenkins is required to be at work. Hucle also argues that Jenkins was not in the proper place because her dumpster is not on the delivery route. Thus, Hucle concludes the requirements established in Calhoun cannot be met.
 
 
 9
 These arguments fail to persuade us that the district court erred. At the outset we note that there is no definitive framework for analyzing the scope of employment and that Calhoun is a state appellate court formulation; thus Calhoun is not dispositive. Further, Jenkins' investigation is not the conduct giving rise to this complaint. It is his oral and written reports to the postal service that are at issue in the complaint and these actions are the focal point of our analysis. See Stranahan Bros. Catering Co. v. Coit, 45 N.E. 634 (Ohio 1896) (in assessing the liability of an employer for an employee who watered down milk, the court noted that it was the delivery that produced the harm. Had the watered milk not been delivered, no harm would have occurred).
 
 
 10
 The conduct at issue in the complaint, Jenkins' reporting of information to the postal authorities and the affidavit he later provided to the investigators, were actions he was required to do. Postal employees are under a duty to report violations of postal laws. See Part 666.52 of the USPS Employee and Labor Relations Manual ("[v]iolations of postal laws, including irregular practices involving the handling of ... property will be reported to the postal inspector in charge"). Therefore, Jenkins acted within the scope of his authority in reporting his discovery of undelivered mail.
 
 
 11
 Hucle alleges that Jenkins reported her because he wanted her job; however, his motive in reporting his discovery does not render his conduct outside the scope of employment. In Woods v. McGuire, 954 F.2d 388, 390 (6th Cir. 1992), this court in reviewing whether the postal employees were acting within the scope of their employment thereby making substitution of the United States proper, held that defendants' motivation was not relevant if they were acting within the scope of their authority. See also Wiebold Studio, Inc. v. Old World Restorations, Inc., 484 N.E.2d 280 (Ohio) App. 1985) (upholding jury verdict that plaintiff's president acted within scope of employment in harassing competitor with telephone calls, sending articles for repair with fictitious return addresses and deceptive advertising because although he acted excessively his purpose was to reduce competitor's impact on his business).
 
 
 12
 The only evidence offered by Hucle in responding to the government's motion for summary judgment was her affidavit. The affidavit indicated that Hucle intended "to prove Jenkins' statements false" and intended to prove that Jenkins acted outside "the scope of employment for purely personal reasons." Her intentions are not sufficient evidence to withstand the evidence offered by the government. Here Jenkins reported the mishandling of mail, something he was authorized to do. His accusation against Hucle, even if malicious, is still within the scope of his authority as it is connected to his employer's business.
 
 
 13
 Therefore, we AFFIRM.